[Brannon v. The State.]

# Brannon v. The State.

## Keeping Gaming Table.

(Decided December 17, 1914. Rehearing denied January 12, 1915.
67 South. 634.)

1. *Vagrancy; Keeping Gaming House.*—The legislature has the power to define the offense of vagrancy, and to make persons guilty of vagrancy who engage in any unlawful calling, such as keeping a gambling house.

2. *Same; Evidence.*—The evidence examined, and held sufficient to justify a finding by the jury that the defendant had been the keeper of a gaming house, and hence to support a charge of vagrancy based thereon.

3. *Indictment and Information; Joinder of Counts; Vagrancy.*—An indictment was good which joined charges in separate counts under the different sub-divisions of section 7843, Code 1907.

4. *Same.*—Where a count in the indictment charged, in the words of the statute, the offense created by sub-division 11, section 7843, Code 1907, and it would not have been affected had there been a nol prosse as to the other count, the count was good.

5. *Appeal and Error; Invited Error.*—Where a defendant requested the affirmative charge as to one count in the indictment, and the court gave such charge, the defendant cannot assign such action of the court as reversible error.

APPEAL from Jefferson Criminal Court.

Heard before Hon. S. E. GREENE.

Jim Brannon was convicted of vagrancy, in that he kept a gambling house, and he appeals. Affirmed.

MORRIS LOVEMAN and ALLEN, BELL & SADLER, for appellant. Other than in count 1 the indictment does not charge the offense in the form prescribed by law, and the indictment was subject to the infirmities pointed out.—*Turnipseed v. The State,* 6 Ala. 664; *Miles v. The State,* 94 Ala. 108; *Grattan v. The State,* 71 Ala. 346; *McGee v. The State,* 115 Ala. 135. The first count in the indictment charged vagrancy in the form prescribed by law, and after that was charged out by the court,

the defendant was entitled to an instructed verdict.—Authorities supra, and *Krelhaus v. The State,* 164 Ala. 623; *Batre v. The State,* 18 Ala. 122.

ROBERT C. BRICKELL, Attorney General and W. L. MARTIN, Assistant Attorney General, for the State. The fourth count of the indictment charged the offense in the words of sub-division 11 § 7843, Code 1907, and was sufficient.—*Traylor v. The State,* 100 Ala. 142. It was competent for the Legislature to make the keeping of a gaming house an act of vagrancy.—*Boulo v. The State,* 49 Ala. 22; *Ex parte Bourchfield,* 52 Ala. 377. It was competent for the indictment to charge the various offenses in sepaarte counts.—*Wooster v. The State,* 55 Ala. 217; *Boatner v. The State,* 8 Ala. App. 36.

PELHAM, P. J.—The fourth count of the indictment upon which the defendant was convicted is in the following language: "The grand jury of said county further charge that, before the finding of this indictment, Jim Brannon was a keeper, proprietor, or employee of a gambling house, against the peace and dignity of the state of Alabama."

It will be seen that this count was framed as coming within the eleventh of the 13 classes of persons enumerated by the statute in its classification or description of persons who shall be deemed to be vagrants.—Code, § 7843, subd. 11.

If the Legislature can make an act of abandonment and failure and inability to contribute to the support of the family vagrancy (*Boulo v. State,* 49 Ala. 22), or the keeping of a house of ill fame or a common prostitute without honest means of maintenance (*Ex parte Birchfield,* 52 Ala. 377), there would seem to be no good reason for holding that it could not define kindred acts

[Brannon v. The State.]

leading to similar nuisances and evils, such as keeping
a gambling house, or professional gambling, or begging,
as vagrancy. It is within the power of the Legislature
to define and deem those classes of persons who engage
in an unlawful calling, as gambling, to be vagrants.—
*Shreveport v. Bowen,* 116 La. 522, 40 South. 859; *John-
son v. State,* 28 Tex. App. 562, 13 S. W. 1005. Statutes
which have classed professional gamblers and others of
that class as vagrants have always been upheld.—39
Cyc. 111, and authorities cited in note 19.

It did not vitiate the indictment that in separate
counts it joined charges under different subdivisions of
the section defining vagrancy. The sufficiency of the
count upon which the conviction was had was not at-
tacked by demurrer, or otherwise, in the trial court. Is-
sue was taken on it without objection. It was a good
count, charging the offense created by the statute in the
words of the statute defining it (*Traylor v. State,* 100
Ala. 142, 14 South. 634; *Jordan v. State,* 5 Ala. App.
229, 59 South. 710, and cases there cited), and would
not have been affected had there been a nol. pros. as to
the other counts (*Wooster v. State,* 55 Ala. 217), or
if, as in this case, the court gave the general charge as
to certain of the other counts. It is true one of the
counts on which the court gave the general charge is in
the general form for vagrancy prescribed by the Code,
but that would not affect the fourth count, which was
a good count more specifically designating and particu-
larizing the charge against the defendant and informing
him of the exact subdivision of the statute enumerating
the classes of persons described as vagrants, under
which he was being prosecuted. Of course the defend-
ant could have been prosecuted and convicted of va-
grancy under the count charging the defendant with
vagrancy in the general form laid down in the statute,

and it could even be said that the court assumed an inconsistent attitude in giving the general charge as to this count and submitting the fourth count to the jury. But this action of the court was invited at the instance of the defendant by a request in writing, and he cannot thus invite action of the court favorable to himself, though erroneous, and then complain of it as prejudicial and take advantage of the ruling of the court in the defendant's favor, made at the defendant's request, and make it a basis for a contention that the court's ruling constitutes reversible error as against the defendant. A defendant cannot be heard to complain at the action of the court which was superinduced by him.—*Lucas v. State,* 144 Ala. 63, 39 South. 821, 3 L. R. A. (N. S.) 412. The action, though erroneous, is not available to the party invoking it.—*W. U. Tel. Co. v. Griffith,* 161 Ala. 241, 50 South. 91.

As we read the evidence set out in the bill of exceptions, counsel for appellant are mistaken in the assertion contained in brief and argument that "there was not the slightest evidence of proprietorship or employment in any of the gambling houses referred to." The state's witness Dailey testified that he "understood" that the defendant, Brannon, was interested in the Saratoga Hotel "while the same was in operation," and was one of the proprietors of the hotel. There is ample evidence to support a finding that this hotel, "while in operation," was being operated as, and in connection with, a gambling house. The state's witness Eagan testified on cross-examination by defendant's counsel that he (witness) knew that the defendant was "interested in" the Saratoga Hotel and in the Burton Hotel. The defendant himself testified that he was at one time one of the proprietors of the Saratoga Hotel, and also had "acquired an interest in the Burton Hotel Company,"

and that on one occasion he had been arrested for gaming in the Saratoga Hotel. There was abundant evidence affording an inference that these hotels were run as gambling houses, frequented by men known as gamblers, and that the defendant was a frequenter of these and other resorts reputed to be gambling places. There was no evidence introduced having a tendency to show to the contrary, or that these resorts or hotels were operated in the interests of a legitimate hotel or other business. It seems to us that the evidence afforded a basis for an inference, as found by the jury, that the defendant was a keeper, proprietor, or employee of a gambling house.

No reversible error is shown by the record.

Affirmed.